UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS F.,<br><br>                     Plaintiff,<br><br>v.<br><br>Andrew M. SAUL, Commissioner of Social Security,<br><br>                     Defendant. | Case No.: 3:19-cv-0989-AGS<br><br>**ORDER ON SUMMARY-JUDGMENT MOTIONS (ECF 20 & 22)** |

The key question in this Social Security appeal is whether the agency's errors were harmless.

## **BACKGROUND**

While deployed to Iraq with the U.S. Air Force, claimant Thomas F. hurt his lower back lifting sandbags, leading to radicular pain in his left leg. (AR 480, 483.) Several years later, he aggravated the injury in a crane accident. (AR 35, 480, 483.) Thomas then had three back surgeries, culminating in a two-level spinal fusion. (AR 21-22, 35, 263-67, 412-18.) In 2010, less than a year after the final spinal surgery, the Air Force medically discharged him with a 52% combined disability rating. (AR 478.) Six years later, Thomas underwent arthroscopic surgery on his right knee. (AR 22.)

Thomas applied for Social Security benefits, alleging a permanent disability starting sometime between 2010 and 2016. (AR 15.) At the Social Security Administration's request, Dr. Dennis Gordon examined Thomas's back and concluded that he had several restrictions, including standing or walking "2 hours in an 8 hr workday (sedentary)." (AR 765; *see also* AR 23.)

After a hearing, an Administrative Law Judge determined that Thomas's lumbar fusion and "status post arthroscopic surgery to the right knee" were severe impairments, but they did not leave him unable to work. (AR 17, 25-26.) The ALJ discounted Dr. Gordon's opinion because, among other things, he found that Thomas could walk and

stand longer than Dr. Gordon indicated. (AR 23.) The ALJ also gave "little weight" to Thomas's Air Force disability rating. (AR 24.)

# DISCUSSION

On appeal, Thomas challenges the ALJ's treatment of both Dr. Gordon's opinion and the military's disability rating.

## A.   Governing Law

This Court may set aside the Social Security Administration's "denial of [disability] benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *see also* 42 U.S.C. § 405(g). "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (citation omitted). When "the evidence is susceptible to more than one rational interpretation," a court must defer to the ALJ. *See id.* (citation omitted).

Moreover, a court may not upset an ALJ's decision for a harmless error. An error is harmless when it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). In Social Security appeals, claimants must therefore show that any errors raise a "substantial likelihood of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

## B.   Examining Doctor's Opinion

First, Thomas argues that the ALJ erroneously discredited Dr. Gordon's opinion. When, as here, an examining doctor's opinion is "contradicted by another doctor," it "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Among other things, Dr. Gordon opined that Thomas could stand or walk "2 hours in an 8 hr workday

(sedentary)." (AR 765.) The ALJ disagreed, concluding that Thomas's "reported activities of daily living suggest that he would be capable of standing and/or walking" more than that.[1] (AR 23.)

But Thomas's daily activities *don't* suggest that he can stand or walk for two hours in a workday. Or, more precisely, the record lacks substantial evidence of daily activities requiring that much walking or standing. Thomas testified, "Whether it's standing, sitting, walking . . . I don't do much of anything more than 20, 30 minutes before I need kind of an adjustment or something different." (AR 39.) He affirmed that he "could prepare simple meals, drive, . . . shop for groceries, handle money, and perform at least light household chores," and that he "complete[d] several college classes with good grades." (AR 21-22.) But most of these tasks can be done sitting. And even the ones that require walking or standing—like cooking, shopping, and household chores—are briefer projects that can be broken up with rest breaks. Thomas in fact reported that his food preparation is rather limited: "cereal, yogurt, some frozen [meals]. And [I] usually try to cook one decent meal everyday and *typically sit down while [the] food cooks*." (AR 161 (emphasis added).) Likewise, he stated that he does a "couple household chores if I'm up to it" on an "occasional[]" basis or "every couple weeks" and that he shops "occasionally" for 30 minutes to an hour. (AR 160-62.)

The only other daily activity that the ALJ mentioned was Thomas's "reported work activity including welding and metal fabrication." (AR 22.) But these labors can also be performed seated, and the record is murky as to how often or in what capacity he did them.

---

[1] The Commissioner also maintains that Dr. Gordon's standing-and-walking restrictions were "inconsistent with his own examination findings." (ECF 22-1, at 3.) But the ALJ never mentioned this rationale. This Court's review is limited to "reasons and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

In one medical record, Thomas disclosed that he was "doing *some* metal fabrication work" because he had been unable to keep a part-time job at an auto-parts store due to "his lower back discomfort." (AR 228 (emphasis added).) In other words, the "record actually demonstrates that Dr. [Gordon]'s findings were consistent with [Thomas's] descriptions of [his] daily activities." *See Revels v. Berryhill*, 874 F.3d 648, 664 (9th Cir. 2017).

So the ALJ's sole reason for disregarding Dr. Gordon's standing-and-walking strictures was faulty. But was that error harmless? Thomas has done little to carry his burden of demonstrating a "substantial likelihood of prejudice." *See Ludwig*, 681 F.3d at 1054. In fact, he concedes that "it is not fully clear whether crediting this opinion would warrant a finding of disability." (ECF 20-1, at 8.) But the full effect of Dr. Gordon's opinion is crystal clear. Even if the ALJ had completely embraced Dr. Gordon's recommended restrictions, the vocational expert would have deemed Thomas capable of working. After all, the ALJ posed *two* hypotheticals to that expert: one incorporating the restrictions that the ALJ ultimately adopted and another adding Dr. Gordon's proposed standing-and-walking limitations. (AR 42-43; *see also* AR 23.) For each hypothetical, the ALJ asked the vocational expert whether Thomas could work under those constraints. (AR 42-43.) Each time, the expert replied that Thomas would still be employable and offered several examples of jobs that he could do within those limits. (AR 43.) This undisputed testimony is fatal to Thomas's claim of prejudicial error.[2]

**C.    Air Force Disability Rating**

Thomas next complains that the ALJ gave "little weight" to his Air Force disability rating. As a threshold matter, the parties agree that the Air Force uses the same rating system as the Department of Veterans Affairs and that the caselaw on VA ratings applies.

---

[2] For the harmlessness analysis, it bears noting that much of Dr. Gordon's opinion was unhelpful to Thomas. For example, Dr. Gordon believed that Thomas could "*frequently* climb ramps and stairs, . . . stoop, kneel, crouch, and crawl." (AR 23; *see also* AR 765.) The ALJ aided Thomas's cause by rejecting this conclusion and finding that Thomas could only do these movements "occasionally." (AR 20, 23.)

(*See* ECF 20-1, at 9-10; ECF 22-1, at 6-7.) That caselaw, in turn, recognizes the "marked similarity" between the disability determinations of the VA and the Social Security Administration. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Thus, ALJs must ordinarily assign "great weight" to a VA rating unless they offer "persuasive, specific, valid reasons for [discounting it] that are supported by the record."[3] *Id.*

    The ALJ offered two reasons for questioning the rating's significance here, but none that are persuasive, specific, and valid. First, the ALJ criticized the rating's lack of "specific function-by-function limitations." (AR 24.) But the absence of a "function-by-function assessment" is "not a valid basis to reject a VA disability determination," as this justification is "merely based on the differences between the two agencies' disability programs and the form of their findings." *See Shannan C. v. Comm'r of Soc. Sec.*, No. 6:18-cv-00625-CL, 2019 WL 6468559, at *8 (D. Or. Dec. 2, 2019); *see also Robert H. v. Berryhill*, No. 3:17-cv-05691-TLF, 2018 WL 5292368, at *8 (W.D. Wash. Oct. 25, 2018) (rejecting an ALJ's finding that the "VA ratings" do not give enough "functionally specific information" because this criticism was not "a valid or specific reason").

    The ALJ's second reason for not entirely accepting the Air Force rating is that it does not "necessarily preclude . . . other work activity." (AR 24.) Put another way, the ALJ in essence argues: *Because the Air Force concedes that Thomas may still hold some civilian jobs, I am free to ignore that conclusion (even though I agree with it)*. This may be a strong argument for harmless error, but it is an invalid and unpersuasive rationale for distrusting the Air Force rating. As neither of the ALJ's proffered reasons pass muster, the ALJ erred in giving less weight to the Air Force disability rating.

---

[3] Thomas's 2016 disability-benefits application would be decided under a different rule if filed today. As of March 27, 2017, the Social Security Administration will not analyze another government agency's decision "about whether [the claimant is] disabled." *Underhill v. Berryhill*, 685 F. App'x 522, 524 n.1 (9th Cir. 2017) (citation omitted).

5

Thomas must again carry the burden of showing that this error raises a "substantial likelihood of prejudice." *See Ludwig*, 681 F.3d at 1054. To resolve that issue, we must delve into VA ratings generally and Thomas's rating in particular. To be deemed unemployable for civilian work under the VA scheme, a veteran needs at least a 60% rating for a single disability or a 70% combined rating for multiple disabilities. *See* 38 C.F.R. § 4.16(a). Thomas fell below those thresholds: The Air Force assigned him ratings of 40% for his lumbar disc herniation and 20% for his left leg radicular neuritis, with a 52% combined disability rating. (AR 478-79.) So, Thomas's rating actually suggested that he could perform some civilian work. And nothing in the record indicates that the health conditions covered by his Air Force rating worsened after his medical retirement. To the contrary, the ALJ repeatedly noted that Thomas's "condition was stable" during the period of alleged disability, and at times Thomas even "requested a reduction in his pain medications." (AR 22; *see also* AR 23 (noting Thomas's "surgical history [while he was still in the Air Force] and subsequently stable condition"); *id*. (relying on Thomas's post-surgery "recovery and stability" for discounting an opinion offered when Thomas was still in the military).)

In short, the Air Force rating *supports* the ALJ's ruling that Thomas was capable of performing jobs in the national economy and thereby undercuts any claim of prejudice. At any rate, Thomas has done little to shoulder his burden of proving otherwise. His two arguments for prejudice both betray a misunderstanding of his disability rating's meaning. First, Thomas contends that his Air Force rating required his medical retirement from active duty, which "*could* mean that he cannot engage in substantial gainful activity." (ECF 20-1, at 10 (emphasis added).) But it didn't mean that here. While the Air Force found Thomas unfit for further military service, it also gave him a 52% combined disability rating, implying he is fit for civilian work. *See* 38 C.F.R. § 4.16(a); (AR 478). Second, Thomas points out that his rating is close to "the 80% rating" that *McCartey* equated to an "inability to perform any substantial gainful activity." (ECF 20-1, at 10.) That is a non sequitur. The "total disability rating of 80%" in *McCartey* exceeds the VA's

70% combined-disability-rating benchmark for unemployability. *See McCartey*, 298 F.3d at 1073; 38 C.F.R. § 4.16(a). By contrast, Thomas's 52% combined rating falls below that threshold. *See Brewer v. Colvin*, No. 4:12-CV-00542-RDP, 2013 WL 6490574, at *7 (N.D. Ala. Dec. 10, 2013) (finding that "any errors in the consideration of the VA ratings were harmless" when plaintiff did not meet "the total disability requirement of seventy percent").

As Thomas has not shown any prejudice, the ALJ's error in doubting the Air Force disability rating was harmless.

## CONCLUSION

Because both claimed errors are harmless, the Court affirms the ALJ's decision. So plaintiff Thomas's summary-judgment motion is denied, and defendant's cross-motion for summary judgment is granted.

**AFFIRMED.**

Dated:  March 26, 2021

_____
Hon. Andrew G. Schopler
United States Magistrate Judge